United States of America

v.    Case No. 3:19-CR-1-002 (CAR)

Joshua Woodey

## Motion for a Reduction in Sentence Under the Compassionate Release Provisions Pursuant to 18 USC 3582(c)(1)(A), the First Step Act of 2018 and Policy Statement at 1B1.13

Petitioner, Joshua Woodey, hearby respectfully requests, pro se, for a Motion granting a reduction in sentence to time served under the applicable provisions of the compassionate release laws and policies as detailed in the Legal Principles Section below. In support of this request, the petitioner presents the following information on his behalf.

### 1. Summary of the Request

The information, statutes and circumstances summarized here are further detailed in the legal principles and Compliance and Eligibility Sections which follows

1. My Motion for Compassionate Release/ Reduction in Sentence is Properly Before this Court.

Since more than 30 days have lapsed since my request to the warden for compassionate release, I meet the requirement to motion the court directly.

A. "Because 30 days have passed since those requests [to the BOP], the court has authority to hear this matter under 3582(c)(1)(A)". <u>U.S. v York</u>, E.D. Tenn, 7/18/19

B. A defendent must file a request with the BOP "and then either exhaust administrative appeals <u>OR</u> wait 30 days after submitting his request to the BOP (warden)." <u>U.S. v Heromin</u>, at *1. M.D. Fla. 6/17/19

2. The Courts have the Authority to Make Their Own Determination of What is Extraordinary and Compelling.

With the new statute, the court has the authority to determine what they consider extraordinary and compelling.

A. "Given the changes to the statute, the BOP policy statement provisions that was previously applicable to 18 USC. 3582(c)(1)(A) no longer fits with the statute and thus does not comply with congressional mandate"... and USSG 1B1.13 is not

appropriate use of the statute"... therefore "when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons exist other than those delineated (in 1B1.13) ... warrant granting relief." US v. Cantu S.D. Texas, 2019 WL 2498923, 6/17/19

B. "... the terms of the First Step Act gave courts independant authority to grant motions for compassionate release and says nothing about deference to the BOP, thus establishing that Congress wants courts to take a de novo look at compassionate release motions." US v Beck, M.D.N.C., case no. 1:13-cr-00186-CCE, Doc 539, 6/28/19

3. My request meets requirements of extraordinary and compelling "other reasons" as provided in 18 USC 3582(c)(1)(A)

A. Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the US Sentencing Commission. Consistent with the text and legislative history of

3582(c), the Sentencing Commission created several categories and concluded that reasons beyond medical, age, and family circumstances could qualify as "extraordinary or compelling reasons" for resentencing. Accordingly, they provided for the category "other reasons", which is to be used when there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C) [for medical, age, and family]. Policy statement 1B1.13, Application note 1(D)

4. As a first time prison inmate, the time that I have served is a significant amount of time.

   The 6 months that I have served is a significant amount of time, especially since I am 40 years of age and have never served prison time before.

A. "A sentence of 24 months is a significant amount of time, especially to an offender who has never been incarcerated before." US v Lenagh D. Neb 2/6/09

5

B. "For an inmate who had served 6 years of a 15 year sentence... that is a significant punishment, especially for someone who has never been incarcerated before." <u>US v Beck</u>, M.D. N.C., 6/28/19

5. My request is based on 18 USC 3582(c)(1)(A), for the extraordinary and compelling criteria of "other reasons."

On April 27, 2020 FMC Lexington had its first case of the Covid-19 coronavirus. Within 30 days the cases had ballooned to 284 and 5 deaths. This is almost one quarter of the entire prison population at FMC Lexington. The initial case was in one housing unit and has now spread to at least 3 housing units. The Governor of Kentucky, on one of his daily press conferences, stated that he was very concerned about the situation at FMC Lexington. He offered to allow the State Health Department to test all inmates and staff with the State of Kentucky bearing all costs. The Warden at FMC Lexington refused this request. Without mass testing the situation at FMC Lexington remains extremely dangerous for

the spread of Covid-19. At least 3 times a day inmates stand in line within inches of each other. It is impossible to practice social distancing in this setting as we sleep within 2.5 ft. of each other, share bathrooms and showers and eat our meals in small rooms with 6-10 inmates. Prison staff rotate between infected units and uninfected units on a daily basis. These same staff members go out into the community after work hours with no restrictions on who they see or where they go. When these staff members return to FMC Lexington they are not tested for Covid-19. Again, a very dangerous practice that increases the spread of this deadly virus.

The Lexington, KY media have reported on the evergrowing crisis at FMC Lexington. Numerous media outlets as well as the Governor have made statements about FMC Lexington that the prison has been "less than open and transparent" with their timely reporting of the number of cases, deaths, and how many inmates have been tested. I, nor anyone in my housing unit of 170 inmates have been tested.

The BOP announced on May 22 that it

is finally going to begin mass testing at BOP facilities. However, they announced they plan to use Abbot Labs "ID Now" point-of-care test technology, which the FDA, on May 15 flagged for potentially returning false negative results. A study by New York University showed the device returned false negatives for 48% of tests that were found positive with different tests.

In what seems to be an effort to hide the severity and apparent mismanagement of the danger at FMC Lexington, the prison is only reporting an "official" number of 285 cases. They are deducting those who have died and inmates who "they determine" have recovered. This NET reporting is different than what the CDC, all 50 states, CNN, MSNBC, every nation in the free world and John Hopkins Hospital who all report their cumalative number. This kind of misleading of the facts is what caused Attorney General Barr to come down hard on the failures at 3 other BOP facilities (Oakdale, La., Elkton, Ohio and Danbury, Conn.) Prisons where federal judges ordered immediate release of hundreds of vulnerable and nonviolent inmates. As of this date,

according to the BOP, FMC Lexington has the 2nd most cases of all BOP facilities.

This situation at FMC Lexington meets the requirements of Extraordinary and Compelling "other reasons" as provided in 18 USC 3582(c)(1)(A).

In fact, in a USA Today article on May 20, 2020 the 2 leaders of the Senate Judiciary Committee were quoted after a meeting with the Attorney General. Senators Dick Durbin, D-Ill., and Chuck Grassly, R-Iowa stated after speaking with A.G. Barr "We were encouraged to hear the Attorney General say that the Covid-19 pandemic will now be a basis for compassionate release..."

6. My recently diagnosed medical situation

In early March (upon entering the BOP) 2020 I was diagnosed with Tuberculosis. It was a diagnosis made by the doctor here at FMC Lexington.

I am currently being treated but will never be cured of this lung disease. The instructions that were given to me by the doctor at FMC Lexington was "to avoid, the best I can, for the rest of my

life, the influenza virus and pneumonia. Complications from either would be severe in combination with Tuberculosis."

Covid-19 is a respiratory flu that my immune system couldn't fight off. I am highly vulnerable to its effects.

7. My conduct since incarcerated

Since incarcerated I have had no disciplinary reports. I have had no rule infractions whatsoever. That is including my time in county jail, federal holding and transport, and here at FMC Lexington. I have treated all staff with respect and courtesy at all times.

I had enrolled in several self-improvement courses that were suggested by my case manager. Unfortunately, those classes were cancelled due to the Covid-19 outbreak. During the prison lockdown FMC Lexington has offered one Self-Confidence course (which I completed) and one vocational CDL course (which I am currently enrolled).

I have spent over 180 days in a row thinking about my life's mistakes due

to addiction. I would like the opportunity to help change peoples outlook on using illegal drugs. I would like the opportunity to repay society through the educating of young adults to the dangers of drug use and the potential lose of freedom.

## Conclusion

The word extraordinary means - notably unusual or exceptional. I believe the 2020 Covid-19 outbreak to be very extraordinary. The compelling aspect is my vulnerability to the virus because of my tuberculosis.

The compassion would be for my family as well as myself. I have 3 children who are struggling. They are struggling financially but more importantly they are struggling emotionaly. They are worried about their father. I am also constantly worried about them.

The world is not what it was when I was sentenced. I am also not the same. My medical diagnosis combined

with my being within eye sight of my potential death has put things into a different perspective for me.

I did not have a "victim" in my case. I am non-violent. Prison and this Covid-19 outbreak have changed me.

Please have mercy on me before it is too late. I do not deserve to lose my life for my crime.

Josh Woodey          Josh Woodey

FMC Lexington KY
PO Box 14500
Lexington KY 40512